Connolly, J.
Plaintiff Marion Elliott (Elliott) brings this action against defendant Shaw’s Supermarkets, Inc. (Shaw’s) for negligence and against Shaw’s and Liberty Mutual Insurance Group (Liberty Mutual) for violations of G.L. c. 93A and G.L. c. 176D.[1] Shaw’s and Liberty Mutual move for dismissal of all counts in the complaint on the grounds that Elliott knowingly committed a fraud upon the court, deprived Shaw’s of the opportunity to obtain an impartial fair trial, and unduly prejudiced Shaw’s trial defense. Elliott opposes the motion claiming that her acquisition of information pertaining to this case from the computer system at Liberty Mutual does not amount to fraud on the court. Based on the following, Shaw’s motion for dismissal is allowed.
BACKGROUND
Elliott allegedly was injured in a fall at the Shaw’s Supermarket in Weymouth, Massachusetts on June 4, 1991. Elliott filed a claim against Shaw’s. Liberty Mutual was employed as an agent of Shaw’s to investigate, evaluate and possibly settle Elliott’s claim. At the time of the incident and until September 27, 1994, Elliott was employed by Liberty Mutual as a call director. Elliott had an identification number and private code which allowed her access into the computer system at Liberty Mutual.
Helmsman Management Services, Inc. (Helmsman) acted as the third-party claims administrator on behalf of Shaw’s during the pendency of Elliott’s claim. Helmsman, a division of Liberty Mutual, maintained Elliott’s claims file in its computer system.
Elliott has admitted that she accessed her electronic claims file from her computer at Liberty Mutual approximately four or five times starting in November 1993. Elliott printed out 78 pages from the electronic claims file (the file) and delivered them in a sealed envelope to her attorney in July 1994.[2] Elliott accessed her file for the final time in late September 1994.
Raquel Smith (Smith), a co-worker of Elliott’s, gained access into Elliott’s electronic claims file at Elliott’s request on several different occasions. Smith also printed documents from this file. She last accessed the file on September 26, 1994.
The numerous documents printed by Elliott from the electronic claims file have been reviewed by the Court. The 78 page print-out consists of file entries made by Helmsman between August 1991 and September 1994. The information in this print-out includes attorney impressions and plans for trial; the defense’s evaluation of evidence and consideration of the strengths and weaknesses of the evidence for each side; the results of investigations and surveillance activities; correspondence and conversations between the defense attorney and the claims representatives; discussions of potential witnesses’ testimony and evaluation of such testimony; discussion and evaluation of settlement options; critique and evaluation of Elliott’s deposition; concerns about admissibility of evidence; and other information concerning Shaw’s and Liberty Mutual’s defense of this case.
DISCUSSION
“Fraud on the court occurs where a party tampers with the fair administration of justice by deceiving ‘the institutions set up to protect and safeguard the public’ or otherwise abusing or undermining the integrity of the judicial process.” Rockdale Management Co. v. Shawmut Bank, N.A., 418 Mass. 596, 598 (1994), citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944). The determination of whether a fraud on the court has been committed is fact-specific and decided on a case-by-case basis. *315 Rockdale Management Co. v. Shawmut Bank, N.A., supra at 599 (Judge properly allowed defendant’s motion to dismiss where the record clearly demonstrated that the plaintiff undertook a course of conduct intended improperly to influence and deceive the defendant and the court).
A fraud on the court is committed when a party, through some unconscionable scheme, calculates to interfere with thejudicial system’s ability to adjudicate a matter impartially. Id. at 598, citing Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). Such interference with the judicial system may be found when a party improperly influences the trier or unfairly hampers the presentation of the opposing party's claim or defense. Rockdale Management Co. v. Shawmut Bank, N.A., supra at 590.
The Court has broad discretion to fashion a judicial response where it has been demonstrated clearly and convincingly that a fraud on the court has occurred. Id. Conduct, such as impeding the discovery process, has been determined to warrant dismissal of an action for fraud on the court. Id. In considering dismissal, the court carefully balances the policy favoring adjudication on the merits with competing policies, such as the need to maintain institutional integrity and the desire to deter future misconduct. Aoude v. Mobil Oil Corp., supra at 1118.
In the present case, Elliott gained an unfair advantage over Shaw’s and hindered Shaw’s ability to prepare and present its case by accessing her electronic claims file from her computer at Liberty Mutual. See Id. The information obtained by Elliott clearly had the capacity to influence the adjudication of her claims and the fact that Elliott’s misconduct was discovered before the opportunity to use such information arose does not immunize Elliott from the consequences of her actions. Id. at 1120.
Elliott argues that she did not perpetrate a fraud upon the court because her acquisition of information from the computer system at Liberty Mutual does not rise to the level of misconduct found to constitute fraud upon the court by the Rockdale and Aoude courts. In Rockdale, the plaintiff, in his answers to interrogatories, submitted a forged letter concerning a lease agreement in order to prove damages and in Aoude, the plaintiff attached a false purchase agreement to his complaint. In both cases the fact that the misconduct was discovered before trial did not dissuade the court from dismissing the actions.
Although Elliott has not submitted falsified evidence or offered false testimony, she has, in a sense, impeded the discovery process by violating Mass.R.Civ.P. 26. See Rockdale Management Co. v. Shawmut Bank, N.A., supra at 600. Elliott filed this action in February, 1993 and thus was subject to the Massachusetts Rules of Civil Procedure during the entire period she was accessing her file. Elliott admits that she accessed and copied portions of her file and she did so without leave of the court. Elliott did not use any of the acceptable discovery methods set out in Mass.R.Civ.P. 26(a) when she accessed her file between November 1993 and September 1994.
A parly may obtain discovery of documents prepared in anticipation of litigation by or for another party only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of her case and that she is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Mass.R.Civ.P. 26(b)3. Elliott did not seek to make the required showings of substantial need and undue hardship pursuant to Mass.R.Civ.P. 26(b)3 before obtaining discovery of the documents prepared by Shaw’s attorney and Liberty Mutual’s agent. Furthermore, the court protects against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation. Mass.R.Civ.P. 26(b)(3). Thus much of the information contained in the 78 page print-out would have been protected and discovery of such would not have been allowed. See Hickman v. Taylor, 329 U.S. 495, 510 (1947).
There is uncontroverted clear and convincing evidence that Elliott intentionally accessed her file over the course of ten months. It is impossible for the court to measure the extent of Elliott’s knowledge of Shaw’s and Liberty Mutual’s trial strategy, attorney mental impressions, opinions, conclusions or theories resulting from her review of the file. Although Elliott claims she only printed 4 or 5 screens, she sent 78 pages of her file to her attorney in July, 1994. Elliott’s exposure to and review of essential elements of the defense is in and of itself prejudicial to Shaw’s case. It would be impossible to appraise accurately the influence that Elliott’s knowledge of the information in her file would exert on the proceedings in this case. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., supra at 247.
As stated by the United States Supreme Court, in the Hazel-Atlas Glass Co. case, “tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society . . .” Id. at 246.
Considering the extent to which Shaw’s is prejudiced by any lesser sanction and the degree of willfulness on the part of Elliott, the court determines that dismissal of the action is warranted in this case. See Young v. Johnny Ribiero Bldg. Co., 787 P.2d 777, 780 (Nev. 1990) (courts have inherent power to dismiss actions for abusive litigation practices). The court also notes the inappropriateness of Elliott’s attorney’s actions in keeping the existence of the 78 page print-out and the knowledge of Elliott’s review of her file from both the defendants and from the court until his client’s misconduct was discovered.
*316 Neither party has requested an evidentiaiy hearing in this matter and as it is uncontroverted that Elliott did review and print her file and deliver it to her attorney, such a hearing is unnecessary in this case. See Hazel-Atlas Glass Co. v. Hartford Empire Co., supra at 249, Note 5; Rockdale Management Co. v. Shawmut Bank, N.A., supra at 600; Auode v. Mobil Oil Corp., supra at 1120.
ORDER
Based on the foregoing, it is ORDERED that defendant Shaw’s Supermarkets, Inc.’s and Liberty Mutual Insurance Group’s Motion to Dismiss is ALLOWED.

Roy Elliott brings a loss of consortium claim and joins with his wife in her 93A and 176D claims.

Elliott testified at deposition that she printed information from only 4 or 5 computer screens, which would result in a 4 or 5 page print-out. However, Elliott’s attorney presented the sealed envelope to the Court containing 78 pages of computer print-out.